Welcome, everybody, to the third day of our sitting here in Atlanta. Judge Brasher and I are pleased to be here with you in person. We have Judge Branch on the telephone, so when addressing the court, don't forget that Judge Branch is present with us. As I keep saying, she'll be playing the voice of God today. Good morning. There she is. Our advocates yesterday, when they were answering a question from Judge Branch, inevitably looked up and to the left. So that's where she resides, somewhere up there. But so, you've been here before, you understand how this goes. We have read your briefs, we've read the underlying record materials, the supporting case law, the statutes. So please, in your limited time before us, don't burden yourself with factual and procedural ramp up. We understand. Just get right to it. And you understand the timing system. As I keep saying, I'm not one to cut you off in the middle of a sentence, but as you see the red light approaching or your time running out, please do prepare to wrap up your remarks. And probably when you see either Judge Brasher or me kind of nodding along, maybe with our tongue in the side of our cheek, that's a good indication that you should wrap it up. All right. So with that, I'm going to call the first case, which is 19-14994, Miguel Alvarado Linares versus the United States. We have Mr. Bryant here for the petitioner and Mr. Traynor here for the appellee, for the respondent. And Mr. Bryant, you may proceed when ready. May it please the Court. Mr. Alvarado's convictions under 18 U.S.C. 924c are unlawful for three main reasons. First, this Court must use a categorical approach in measuring the Vicar offense against 924c's crime of violence definition. Second, the Vicar crimes in Mr. Alvarado's case are based on the Georgia murder statute, not some generic federal statute. Thirdly, the Georgia crime of murder and attempted murder are categorically not crimes of violence because they do not fit within 924c's elements clause. Can I ask you just a question, maybe sort of right out of the gate? I feel like this might be the case in which the categorical approach is finally sort of like jump the shark because here we have a statute, Vicar, that is called violent crime in aid of racketeering. The indictment calls these violent crimes. The jury instruction, the jury instructions call them violent crimes. The statute itself even seems to equate in its language, murdering, kidnapping, maiming, and then it says, you know, dot, dot, dot, or threatens to commit a crime of violence. So how is it that we're living in a land in which Vicar crimes even generally aren't crimes of violence? Your Honor, I appreciate the fact that saying that Georgia, Georgia's murder statute is not a crime of violence certainly may seem counterintuitive. Well, I guess I'm not even getting to the Georgia murder statute. I'm wondering about, I mean, the offense here is Vicar, right? Vicar murder, violent crime murder, basically. And how is it that we're living in a land in which violent crime murder, we're like going to debate whether that's a crime of violence? Because the court, the Supreme Court has told us and the courts to use the categorical approach. And the categorical approach requires an analysis of the elements of the offense. And in this case, the statute that the court is analyzing is the Vicar statute, the violent crime in aid of racketeering. Now analyzing the Vicar statute, we see pretty readily that that statute is divisible. There are multiple ways of committing that offense. As you mentioned, to murder, to kidnap, to maim. And so the court has directed, the Supreme Court has directed us to use the modified categorical approach to determine which of those enumerated offenses is alleged in this case. Now, we know from the documents that the court has referenced, including the indictment, the jury charges, and some other Shepard approved documents that the murder, Georgia's murder statute was alleged. Georgia's murder statute was a statute that the judge, the trial judge charged the jury on. And so Georgia's murder statute ultimately is the offense that this court is going to analyze to determine whether it has the elements that are necessary for a 924C. Let me ask you a question about that. So I think, and I'll ask the government to address this too, I mean, I think you're right in the sense that we would look at the indictment, we would look at the jury instructions. When I look at the jury instructions, I see four elements to Vicar that were instructed. One, a racketeering enterprise. Two, interstate commerce. Three, the defendant committed murder under Georgia's murder statute. Four, the defendant committed the murder with the intent to maintain or increase his position in the enterprise. And I guess my question to you is, let's assume you're right, that Georgia would allow a conviction. It would allow count three to be satisfied by reckless conduct. I mean, not count three, element three. Doesn't element four, where it says that the defendant committed the murder for the purpose or, I don't know, I don't say purpose, but with the intent to increase his position, to maintain his position, doesn't that add an intent element for a Vicar murder that would satisfy the elements clause? It does not for a number of different reasons. One, first is the government would have to prove that the offense, the Georgia offense of murder was committed. And if we don't have that intent element, the government is never able to make that showing. I think Judge Brasher is saying that the intent element is supplied by element four, which the offense here is Vicar murder, not Georgia murder. So you've got Georgia murder plus this Vicar element that says intent to, you know, sort of maintain your position within the organization. So the intent element, though, does not relate back to the intent required from the murder. So, for example, a hypothetical that I've kind of created in a situation in which someone I, for example, wanted to join or increase my position in the gang, I'm willing to follow directions and take a shot at a house. Okay? So my goal, my intent is to increase my position in the gang. So I follow those directions and shoot at a house. However, before doing that, I know that there is no one in that house. There is no one living in that house. I've been told this, the house is boarded up, whatever facts you want to use, but I have a rational belief that there is nobody in the house. So in order to increase my position in the gang, knowing or thinking, believing there's nobody in the house, I take a shot. Much to my surprise, someone is in the house. So your point, which may be a good point, is that you can, like I could engage in reckless conduct or negligent conduct or something to that effect. And I do that conduct with the intent to increase my position. That is exactly the point, Your Honor. Yes. Can I ask you a quick question? You said earlier that sort of vicar murder necessarily looks through to state law and not to a generic federal definition of murder. Can you be convicted of vicar murder without being guilty of generic federal murder? So, no matter how state law purports to define murder, you can be convicted of vicar murder, however goofy that state definition is. I mean, here's a hypothetical. California redefines murder to include the killing of trees. Are you guilty of vicar murder if you cut down a tree? Well, certainly, it would meet the state definition for the offense of murder. Fine. Now, are you guilty of vicar murder? If the other elements of the offense are satisfied, so, for example, the intent element of increasing or gaining a position within the gang, but I don't think that there is anything to suggest that that act of cutting down the trees is going to satisfy that kind of general, generic definition and it's going to be overly broad because, of course, in the 924C context of violence against a person, that certainly would not satisfy that 924C definition of crime of violence. But I guess just within vicar, you're comfortable with the proposition that you can be convicted of vicar murder without, no matter, again, no matter how aggressive the state's definition of murder becomes, without being guilty of generic federal murder. I mean, as I read the statute, I just don't see anything in the vicar statute, and I guess I would think that you might have said something like, sort of, you know, sort of in the interest of criminal defendants more generally, like, no way, and read the statute. I don't see anything in there that suggests that we necessarily have to pierce through to state law, and at the very least, the rule of lenity ought to tell you to read the statute such that you do have to be convicted of some sort of like core murder concept. Right. So, I think that there is, I guess the way I would phrase it is there is kind of a floor under which the conduct could not be classified, and I think the example that you have provided certainly would not meet that general, generic federal definition of murder, and therefore would not qualify as a vicar murder. So then aren't you really conceding that to be convicted of vicar murder, you have to be guilty of generic federal murder, some generic core concept of murder that exists independently of state law? I think the way that I would answer that question is that so long as the statute is not overly broad, right, does not include acts or mens rea that is excluded or not included within the generic federal definition of the murder, then it would qualify. So that floor is the general federal generic definition. Now the definition that we're talking about in Mr. Alvarado's case is that of Georgia murder. Right. So your point, the way I understood your brief to be was just, well that might be well and good, but the jury in this case was charged that murder meant Georgia malice murder, and your guy was indicted with an indictment that says Georgia malice murder. Yes, Your Honor, that's exactly right. And those elements of Georgia malice murder include conduct and include a mens rea that is less than what is required by the 924C. Play that out a little bit, because I'll say, I mean I understand your argument there, but I mean this Georgia statute uses the term malice of forethought, which is a fairly standard mens rea requirement. And doesn't, I guess here's my, doesn't malice of forethought, doesn't that presuppose at least knowledge on the part, something like knowledge on the part of the person who is committing the murder? It's not just what we would classify as like sort of run-of-the-mill recklessness? Sure. So the statute does require malice of forethought, and just reading the statute itself, one could reasonably assume that that's the intent element that's required. However, we are not analyzing these statutes in a vacuum, right? We have decades, if not centuries worth of cases that have interpreted that meaning or that intent element. In our brief, we did cite to a couple of different cases that discussed the intent element of Georgia's murder statute. One of those is Hackney, and one of those is Huey from 2016, citing Browder from a 2013 case. And those cases all discuss that implied malice may be found when the defendant's conduct exhibits a reckless disregard for human life. That's from Huey and Browder. In Hackney, a case that's a bit older, if a person recklessly discharges a gun and a death results, it is settled law that it is murder. And Judge, I see that my time is about to expire. Let me ask you or ask Judge Branch if she has questions before you sit down. Yes. I do have a couple of questions. Thank you, Judge Newsom. In our case, Beaman versus the United States, the defendant bears the burden of establishing that it is more likely than not that he or she was sentenced under the residual clause. Here, the indictment does not discuss either the elements clause or the residual clause. And Judge Story was the judge at trial and the judge at sentencing, and he, in his order, said that the defendant was not sentenced under the residual clause. Why don't you lose under Beaman? Yes, Your Honor. I would urge the court to make a ruling on the merits of this case for a couple of reasons. One is because this has not been raised by the government in their response brief, has not been raised by the government at any time, honestly. The parties, the government and counsel for Mr. Alvarado, have briefed the merits, and we would ask the court to issue a ruling based on those merits. But the government has not waived it by not raising it. The burden resides with you, and I understand that you would like for us to reach the merits, but the burden rests with you trying to get at where in the record do you meet your burden under Beaman, particularly in light of Judge Story's clear statement that the defendant was not sentenced under the residual clause. Can you point me to anything in the record where you meet your burden? Judge Branch, I would ask for an opportunity to provide some supplemental or a letter brief to the court, hopefully by the end of the day tomorrow, if I can come up with something from the record to provide some support for the Beaman rule. Yes, so that's fine. You can file by the end of the day tomorrow, and then we'll give your opposing counsel seven days to respond. All right. Thank you, Judge Newsom. Judge Branch, do you have another question? I do. I've got a couple, if you all will. Sure. Excuse me. This is the problem with participating as I kind of save my questions until the end. It's hard to interrupt live people. Would you agree that, hold on one second, if you assume for the sake of argument that the government's approach is correct, and we only look at the generic federal offense, would bycar murder and attempted murder categorically qualify under the elements clause? Judge Branch, let me confess, I'm not sure that I completely understood the question. I think that in an effort to answer it, it would depend on which statute we are talking about. I think that if we are assuming, well, let me not make assumptions, let me just say I'm not sure that I understand the question. Government is right, that we are looking at, we're only looking at the generic federal offense. Will bycar murder and attempted murder categorically qualify under the elements clause? We're not looking through the state law. We're looking at the generic federal offense that the government wins. So the generic federal definition of murder from 1111 is the murder is the unlawful killing of a human being with malice aforethought, very similar to Georgia's state definition of murder. I will say that I have not done an analysis sufficient to give the court an opinion on whether the elements of the federal definition of murder are sufficient to be covered by the vicar offense. I'm just not sure. I can say that as it relates to the Georgia definition, I think the court is aware of our position, but I'm just not sure as it relates to the federal definition. This is Judge Newsom. Judge Branch may know the answer to this already, and she can correct me if I'm wrong, but I think we've held recently in a case called Thompson v. United States that generic federal murder is categorically a crime of violence. So I think the answer to her question may be, yes, if it's generic federal murder, I lose. That's right. Okay. Yes. Okay. And assuming, now I'm going to take you in a different way, assuming that we do have to look through and consider the underlying state predicate, and even if Georgia malice murder encompasses some level of recklessness, in Borden, Justice Kagan explicitly reserved, and it was a fractured decision, but explicitly reserved the issue of whether offenses with mental state between knowledge and recklessness, such as depraved heart or extreme recklessness, reserved the issue of whether that would fall within the ambit of the elements clause. Georgia malice murder, based on implied malice, involved circumstances showing an abandoned and malignant heart. So am I correct that even under Borden, the question of whether such an offense would fall under the elements clause is still open? I disagree. I recognize and certainly respect the Supreme Court's opinion in Borden when it references the extreme recklessness. I think the difference between Mr. Alvarado's case and the way that the Georgia Supreme Court has interpreted Georgia's murder statute is different than saying that this is extreme recklessness. Those are not the elements that the Georgia Supreme Court discusses. It discusses recklessness. It, at times, even discusses negligence or criminal negligence. So I think that the standard that the Georgia Supreme Court has used to interpret its definition of malice or implied malice is even lower than that extreme recklessness that the Supreme Court talked about in Borden. I will note in the Alabamby State case in 2013, in its concurrence, Justice Namias noted that intent or malice is a greater mental state while recklessness and criminal negligence are less culpable. And so I'm trying to figure out where that fits into what was reserved with Borden. And I'm not sure that we are really ever going to know the answer to that other than the language that has been used in the past by the Georgia Supreme Court. The Georgia Supreme Court talks about recklessness. The Georgia Supreme Court talks about negligence or criminal negligence. The Georgia Supreme Court does not use the phrase extreme recklessness. And so I think the mens rea element is even lower than what the Supreme Court was talking about in Borden. That's all the questions I have. Okay. Thank you very much. Thank you. We'll hear from you on rebuttal. Mr. Treanor, we'll hear from you. May it please the Court. Thank you. The jury found Mr. Alvarado guilty of vicar murder and attempted murder. This Court affirmed those convictions. He doesn't challenge them. It's the law of the case that he has been properly convicted under vicar murder and attempted murder. I say that because the way I read Mr. Alvarado's brief is it's like he's trying to, he's asking this Court to impose a second layer of categorical analysis and he's between the Georgia state law and vicar. And the question on this Davis appeal is whether vicar and attempted vicar murder can support a 924C conviction, whether there's force in vicar murder and attempted murder, whether they're crimes of violence, and they are. So let me ask you a question. Your position, I think, is that we don't necessarily need to look through the state law that generic federal murder sort of qualifies vicar murder as a crime of violence. What though, to Judge Brasher's question at the outset about the fact that the indictment and the jury instructions both, in effect, sort of invited a look through to state law? What do we do with that? I just said what do we do with that, sorry. I believe if you look through the cases of vicar, it's a federal offense that includes, it's kind of built on the state predicate in this case, so you have to have a murder that also violates the state law. And so that's the way it's charged, that's the way it's in the indictment. And then Judge Story charges the jury on the four elements of vicar, and when you read the jury instructions, you see he also then charged them on the elements of Georgia malice murder. I will point out, he explicitly told the jury that felony murder did not count against Mr. Alvarado. Right, and so just to get back to the point, he didn't give the, I mean there's no definition of federal murder, there's nothing about some other definition of murder, and when he told the jury element three is that this guy had to commit a murder, the definition of murder for element three of vicar is Georgia malice of forethought murder. So it's, I mean, I'll just grant you, it's conceivable that one could charge someone differently than this, and there'd be some federal definition involved. But the definition, I think in the indictment and in the jury charges, was Georgia malice of forethought murder. Your Honor, on the district court cases we cite, I'll generally get back to a Second Circuit case from 2000 called United States v. Carrillo, C-A-R-R-I-L-L-O, and in that case, the Second Circuit explained that the state elements, right, the elements of the state offense never become the elements of conviction, right, the elements of conviction are the vicar elements. But, and until Carrillo, many courts didn't even charge, when there was a state predicate, the district courts didn't charge the jury, didn't give them the elements of the state predicate, and Carrillo advised that the better, that actually they don't have to, but Carrillo advised it was the better practice to do what Judge Story did, which is to charge the jury on the elements of malice murder, Georgia malice murder. So that way we'll know that they found that this federal killing also violated the state law. Well, that's the thing, you say also, and that's where I just, I'm looking through the indictment and the jury instructions, I don't see an also. The only charge to them, the only one that says, you have to find that this guy committed murder, when I say murder, I mean malice of forethought murder under Georgia law, right? So the only thing the jury found when they convicted him as to whether he committed a murder was that he committed malice of forethought murder under Georgia, I mean, do you disagree that that's what the jury's finding was, that the jury only found that he committed malice of forethought murder? Yes, I disagree. I believe the jury found that he was guilty of vicar murder. Yeah, I guess my point is, what other murder were they, what other definition of murder were they charged with? They were just, they were just given the state malice murder, and in this case, because we're talking about murder, the state malice murder instruction really is the instruction on federal generic murder, right, unlawful killing with malice of forethought. Well, that's a separate issue, I guess, and I'll say, I don't, I incline in your direction on the ultimate resolution of this issue, of this appeal, but I just, I have a hard time understanding how, when we're supposed to look at Shepard documents like the indictment and the jury instructions, how in this case we could say that a federal generic definition of murder matters, when there is no definition, there is no, that definition doesn't appear anywhere in the case. I mean, maybe, maybe your argument is that the district judge charged them incorrectly, but still. Sorry, I believe Judge Story charged them correctly. I don't think you'll find any case, I haven't found any case in my research where the judge instructs the jury on both. The jury never comes back and says generic murder, malice murder, the jury comes back and says vicar murder. But isn't, isn't sort of the point of the categorical approach hard to decipher at times as it is, but isn't the point really to figure out what was the defendant sort of necessarily convicted of before, what's the least that we can assume with some substantial certainty that the defendant was convicted of before, and even if I tend to think that your interpretation of the statute, of the vicar statute, that it embodies this generic federal definition of murder, is the right one? How can we assume that the earlier conviction was sort of necessarily, necessarily embodied that? Well, Your Honor, first of all, I'd say. I said earlier conviction, now I'm bringing ACCA terminology to a 924C case, I'm sorry about that. So the conviction, there's no charge here, no indictment, no charge with respect to, as Judge Brasher said, any definition of murder other than the state definition of murder. So how can we sort of make that categorical approach assumption? First I would say, Your Honor, because the definitions are the same, now if we were dealing with the other vicar crimes, that's when you start getting into differences between federal generic murder and the state statute, but in this case, everyone defines murder pretty much the same. Well, I think, I mean, I get your point, but I think the petitioner's point here is really very, very narrow and specific. I mean, he's arguing that even though the text of the Georgia malice murder statute is the same text that they use in Puerto Rico and that they use in California and that they use in the federal one, that the Georgia Supreme Court has interpreted that differently than all those other authorities. So, you know, if the Georgia Supreme Court says it's different, and I'm not saying that, I'm not saying he's actually right, but I mean, then it's different, right? I mean, if you grant him that, then it's different. Your Honor, the vicar conviction contains conduct. That's why I wrestled so much with this statute in preparing for this. It contains conduct that also violates the state law. But what he was convicted of was vicar murder and attempted murder. And so then looking at the, applying the categorical approach to that, that's where we are in this case, right? I mean, his convictions are settled law, and now we're just looking at, can you put a 924C conviction on vicar murder? I mean, and maybe I misunderstood something in your brief, but in your brief, you agree that we apply, and I think this is clearly true, we have to apply a modified categorical approach because vicar is divisible, right? So we're not, you know, and that ergo, we have to look at the indictment, the jury instructions, that kind of stuff, right? So that's why we're talking, I mean, if vicar were something that was not divisible and we were just looking at murder that's said there, then I would kind of get your point. But since it's divisible and we have to look at those Shepard documents, the Shepard documents have their own definition of murder, and I guess that's where I am on that first argument that you're making about generic federal definition of murder. Well, and our, you know, our position is that Judge Story followed the practice in federal courts, at least since Carrillo in 2000, of just charging on the state elements to make sure that the murder violated the state law, and then in this case, you know, would also violate the federal generic murder. But the jury doesn't make different findings on what type of murder it was. It just finds... Well, it did. I mean, the only finding it made was that it was a state murder, right? Because that was the only charge that was given to the jury. Yes, Your Honor, and then, well, the jury finds him guilty of the vicar murder, of the federal offense. The 924C has to be hinged on a federal offense. Okay. Well, I'll just tell you, I'm not persuaded by that argument at all, and I'm becoming less persuaded the more you talk about it. From my perspective, just speaking for me, could you talk about George's malice before the statute? I would be glad to. Okay. I would be glad to, Your Honor. We have the utmost confidence, if you read the cases we cited in our brief, if you read the cases that Mr. Alvarado cited in his brief, you'll see the Georgia Supreme Court, when they talk about murder, they talk about reckless disregard for human life, they talk about abandoning a malignant heart, depraved heart, these are all terms of art specific to murder. And I gather that the opposing counsel's argument is something like this, that yes, that is correct. This is what Georgia Supreme Court says more often than not, depraved heart, malice. But there are these little, there are these cases every now and then where they seem to suggest recklessness might be the standard. What do you say about that? And I would urge the court to read those cases. Mr. Alvarado relies on Hackney. Hackney is a case where a man fires a pistol into a crowd. He says he didn't mean to shoot anybody, you know, he killed somebody. Reckless disregard for human life. No, I'm sorry, that's Browder. Hackney is from 1949. It's one of those decisions that really doesn't give you the facts, it just goes straight into addressing the complaints of error. But in Hackney, in the second, addressing the second complaint of error, it says that the man recklessly discharged a firearm either at a person or into a thickly populated community. Again, classic definition of reckless disregard for human life. The Georgia cases always use terms of arts that are specific to murder, and as Judge was defining crimes by either depraved heart or extreme recklessness, and that's a higher level of culpability than recklessness, which is what they were dealing with in Borden, and that they were not addressing that higher standard in Borden. We cited the case of Parker v. State, and in that case, the Supreme Court cited six other cases that all, the way the opinion describes it, all unambiguously hold implied malice is reckless disregard for human life. It's not run-of-the-mill negligence or recklessness, and in that case, they also cited LaFave and Scott's definition of extreme criminal negligence, which is again, LaFave and Scott define it as engaging in conduct, knowingly engaging in conduct that poses a grave risk of death to other people. So that's what the Georgia Supreme Court holds. We feel very confident, you'll find that the Georgia malice murder under Georgia law is never just run-of-the-mill negligence or recklessness. And what about the other aspect of the crime, setting recklessness aside, but the act, the bias, so to speak, that, you know, we've said that a violent crime has to entail some sort of violent force, and Georgia's got these cases that seem to say, you know, like for instance, starving your infant, not, sort of crimes of omission, not feeding your infant and allowing that infant to die could constitute malice murder. Your Honor, under this court's jurisprudence, crimes of omission, crimes that still force, following the Supreme Court decision in Castleman, which said that it's impossible to cause injury, right, without applying force in the common law sense, then the Eighth Circuit said, well, if that's the case, and that's the Eighth Circuit case we cite as PEEPLES, P-E-E-P-L-E-S, the Eighth Circuit says, well, if it's impossible to commit injury without applying force, it's impossible to cause someone's death without applying force, and so withholding food, withholding medical care with the intent to harm someone, like a parent withholding food or medical care from a child, with that intent, that's force. And then this court adopted PEEPLES in the case of the United States v. Sanchez, which, I'm sorry, we missed in our brief. Sanchez is 940 Fed Third 526. And this court expressly adopted PEEPLES and said it's the Third Circuit to hold crimes of omission, the withholding medical treatment or food, is force under common law. So that's what we would, that's our response to that, Your Honor. And Your Honor, we didn't raise the, well, my time is up. Let me ask Judge Branch if she has questions. Judge Branch, do you have questions for the government? Yes, I'm here opposing counsel about Beeman. Do you believe that Alvarado Linares has met his burden of proof under Beeman? Again, we do have that extraordinary statement from Judge Story, who was the judge in both Judge Branch, no, we do not believe that Mr. Alvarado has met his burden under Beeman. Or this court issued a decision, Garanda, United States v. Garanda, came out in March of this year after the parties briefed this appeal. Same kind of case where a 2255 claimant has to show a constitutional error and then has to show that it affected him. And Mr. Alvarado never makes that argument in his appeal. And then with respect to felony murder, for example, Judge Story took that off the table, so we never addressed that. We never felt like we had to raise Beeman or Garanda, but no, it's always the movement's burden to prove his case. And under Beeman and Garanda, it's Mr. Alvarado's burden to show that he was sentenced under the residual clause. Let me ask you, just based on your response to that, let me ask a follow-up. You said we didn't feel like we had to raise Beeman. Why didn't you raise Beeman? Because Mr. Alvarado never got there. I read Mr. Alvarado's brief, well, I'm sorry, I didn't write the responsive brief, but we read Mr. Alvarado's brief as really trying to apply the categorical approach to his Vicar conviction, not to the 924C. So that's why we didn't raise it, Your Honor. Okay. Can I just follow up on one of Judge Branch's questions? So the petitioner was representing himself in the district court. Am I right about that? Yes, Your Honor. And we appointed him counsel on appeal? Okay. Yes, Your Honor. I think that might explain some of the procedural oddities in the case. One other question that is kind of procedural in nature, I can't remember how many life sentences this guy got, like four, something like that. If he won this appeal, he would be looking at getting one of his life sentences taken off? Is that right? No, Your Honor. If he wins this appeal, he's serving three concurrent life sentences plus the 85 years for the 4924C charges. So if he wins this appeal, the 85 years drops off, but he still has the three concurrent life sentences. And I looked a little bit into the concurrent sentence doctrine, but I don't think it applies because these are, we're talking about the consecutive time. Because the statute requires the 85 years to be put on top of whatever is, okay. So as a legal matter, these are consecutive sentences, but of course, we only have one life to live. Yes, Your Honor. So as a practical matter, it's probably not. Okay. All right. Thank you. Okay. Thank you very much. Very well. Thank you so much. Mr. Bryant, we'll hear from you on rebuttal. Your Honor, I'd like to begin with talking about the categorical approach again and just let you know that some of the questions on, to the government were regarding how do we, why is it that we're analyzing Georgia's murder statute? And I want to point the Court to two cases, two cases that were cited by the government in their brief. The first is United States v. Manners, which is a Sixth Circuit case. And the second is, I believe it's United States v. Mathis, which is a Fourth Circuit case. Now those are two of the cases that have analyzed 924C, how it relates to Vicar. And in both of those opinions, the Court does the analysis of taking a look at Vicar. But more importantly, because Vicar doesn't have as an element the use of force, looking at the state statute to determine whether the state statute that was charged in the indictment that the jury found a verdict on, whether that state statute qualifies as a verdict for 924C purposes. So I think that given Davis, given Mathis, given Manners, I think that there is ample support for this notion that the Court is to analyze the state statute. The Vicar statute, as I think of it, is almost kind of a pass-through statute. There are some additional elements that the government has to prove when they charge Vicar. But the thrust, the crux of that Vicar statute is the state statute. So I think then, just to circle back to my, you know, maybe goofball hypothetical, your answer to that hypothetical on the California and killing trees is yes, you are guilty of Vicar murder if you chop down a tree in California in my parallel universe. I don't think so. Why? Why? Why is that element not met? Why is the murder element not met? Because it has to be forced against a person to meet the definition of 924C. And that's not met in your hypothetical. Well, I'm just thinking not even about 924C, I'm saying let's just say there's a prosecution for Vicar murder. Forget about 924C. Are you guilty of Vicar murder if you cut down a tree in California in my parallel universe? I believe it falls below what is required by the federal generic definition of murder. Right. So I think what you're saying is, Judge Newsom, to be convicted of Vicar murder, you have to be guilty of generic federal murder. And if that's true, aren't we talking about an offense which has as an element something that we have already held as a court in Thompson is a crime of violence, namely generic federal murder? If we're talking about that generic federal murder, I absolutely would agree with you. The court has held in Thompson that the second degree, I believe, murder does qualify as a predicate, and I believe even a crime of violence. But as it relates to George's definition, which is, of course, the offense that is charged in this case, we come up short. So just so I'm clear, it sounds like you may be close to acknowledging that on the face of the statute, Vicar murder requires proof of generic federal murder. However, in this case, because the charged crime, the instructed crime was passed through, looked through to Georgia law, we may just have this sort of fatal mismatch between what the statute requires and what the judge instructed. That's right. The Georgia statute is too broad and does not meet that definition. And I would just echo that these are decisions that the government made in charging, in bringing the charge, bringing the indictment to charge Georgia's definition. They made the decision when they indicted. The court made the decision to charge on Georgia murder, which was proper at the time. But this might have been dealt with if the government had charged the federal definition of murder as opposed to the state definition of murder. So unless Judge Branch. Yeah. Judge Branch, do you have any questions? I do not. Okay. Thank you very much. And Mr. Bryant, again, to acknowledge your service to the court as an appointed lawyer, we very much appreciate it. You've done a nice job this morning. Thank you. Thank you, Your Honor. All right. So we'll submit that case and move on to case number two.